IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | | |
|---|---|---|
| MOLLY MULVEY, | ) | C/A 2:08-3547-MBS-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| BELLSOUTH TELECOMMUNICATIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

     This case was originally filed in the South Carolina Court of Common Pleas, Charleston County, and was subsequently removed to this United States District Court by the Defendant pursuant to 28 U.S.C. § 1331. Plaintiff, a white female formerly employed of the Defendant, alleges discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq.; and 42 U.S.C. § 1981.

     The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on December 7, 2009. After receiving an extension of time, Plaintiff filed her memorandum in opposition to the Defendant's motion on January 10, 2010. Defendant's motion is now before the Court for disposition.[1]

_____

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local (continued...)

1



## Background and Evidence[2]

Plaintiff was hired by the Defendant on December 16, 2002 as a Sales Associate in the Small Business organization. Plaintiff's Deposition, pp. 19-20; Plaintiff's Exhibit 1 (Affidavit). Sales Associates are involved in customer service, billing, and selling services such as DSL lines, mobile phones, long distance and international plans, as well as maintenance. Plaintiff's Deposition, p. 28; Plaintiff's Exhibit 1, ¶ 11; Plaintiff's Exhibit 6. Upon being hired, Plaintiff underwent a three month training period before she started taking customer calls. Plaintiff's Deposition, p. 27.

Plaintiff had six first level supervisors during her period of employment with the Defendant; Pat Caldwell (White), Donna Caldwell (White), Kevin Gaylord (White), Richard Washington (African American), Stephanie Graham (African American), and Sabrina Rocha (Hispanic). Plaintiff's Deposition, pp. 21-22. Plaintiff's office group included, in addition to herself, eleven (11) other employees (three (3) White males, five (5) African American females, and three (3) White females). Plaintiff's Deposition, pp. 37-38; Plaintiff's Exhibit 1, ¶ 18.

As a non-management employee, Plaintiff was a union employee with the Communications Workers of America (CWA), and was covered by the union's Collective Bargaining Agreement (CBA) with the Defendant. See Defendant's Answers to Local Rule 26.03 Interrogatories, p. 1. Depending on the severity of the misconduct, Plaintiff was subject to the Defendant's four step

---

[1](...continued)
Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]The facts and evidence are considered and discussed in this Report and Recommendation in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



progressive disciplinary policy, which consisted of 1) counseling; 2) warning; 3) suspension (or letter-in-lieu of suspension); and 4) termination. <u>Zelaya Deposition</u>, p. 14.

On August 24, 2006, Plaintiff was given a written warning by Richard Washington concerning an incident of misconduct/failure to follow company policy having to do with emails of a personal nature. Plaintiff declined to sign this warning. <u>Plaintiff's Deposition</u>, p. 34; Exhibit 2. Plaintiff also filed a grievance with the CWA with regard to this warning, and as part of the settlement of the grievance the warning entry was removed from her record in January 2007. <u>Plaintiff's Deposition</u>, pp. 35-36. Defendant also contends that Stephanie Graham counseled the Plaintiff on January 4, 2007 about some errors she had committed in issuing "RCF's"; <u>see</u> <u>Plaintiff's Deposition</u>, Exhibit 3; however, Plaintiff testified that she did not recall this meeting, and does not believe it ever happened. <u>Plaintiff's Deposition</u>, pp. 42-43; <u>see</u> <u>also</u> <u>Plaintiff's Exhibit 1</u>, ¶ 20.

Defendant asserts that Graham thereafter had an "informal discussion" with the Plaintiff on January 10, 2007 concerning Plaintiff's failure to follow instructions using mandatory opening and closing statements. Defendant has provided an exhibit dated that date, bearing Graham's signature, with the space where Plaintiff was supposed to sign containing the notation "declined to sign". <u>Plaintiff's Deposition</u>, Exhibit 4. Plaintiff does not dispute that Graham had an informal discussion with her on January 10, 2007, at which a CWA representative was also present, but she did not recall whether she had been presented with the informal discussion document (<u>Plaintiff's Deposition</u>, Exhibit 4) or whether she had declined to sign that document. <u>Plaintiff's Deposition,</u> pp. 43-44. Plaintiff further attests in her affidavit that this concerned an incident that had occurred four months previous. <u>Plaintiff's Exhibit 1</u>, pp. 25-26.



Graham also had a second meeting with the Plaintiff on January 10, 2007 concerning Plaintiff having failed to properly enter a call block for a customer. Plaintiff's Deposition, Exhibit 5. Again a CWA representative was present. Plaintiff's Deposition, pp. 46-48; see also Plaintiff Affidavit, ¶¶ 25-26. Plaintiff was not issued any type of formal discipline as a result of this infraction. Plaintiff's Deposition, p. 48.

On February 8, 2007 Plaintiff and Graham met to discuss Plaintiff's performance for the month of January 2007.[3] Plaintiff had made her ABRL (monetary goal), but received an unsatisfactory overall performance as an "informal discussion". Graham advised Plaintiff that future LTS overall appraisals could result in disciplinary action. Plaintiff's Deposition, Exhibit 6; Plaintiff's Deposition, pp. 49-50. On her 2006 performance evaluation review, which was for the period January - December 2006, Plaintiff again received a less than satisfactory (LTS) overall performance evaluation. Plaintiff's Deposition, Exhibit 7; see also Plaintiff's Deposition, pp. 50-51.

On February 19, 2007, Graham sent an email to her entire work group noting that management approval was required for all customer adjustments, and that no adjustment should show up on adjustment reports that had not been approved by management. Plaintiff sent an email response to Graham indicating that she had read and understood Graham's email. See Plaintiff's Deposition, Exhibit 8.

On April 17, 2007, Plaintiff received a CPAT referral from the Center Process Analysis Team after a member of the team observed Plaintiff transferring a call to Universal to avoid handling,

---

[3]Plaintiff testified that employees were supposed to have a monthly performance review, although this did not always happen. Plaintiff's Deposition, p. 49.

4



camped on the line for over four minutes,[4] and then hung up when the Universal sales associate referred the customer to Small Business. Plaintiff's Deposition, Exhibit 9. Graham met with the Plaintiff and a CWA representative about this CPAT referral, and Plaintiff conceded at her deposition that, after she had transferred the customer to another department, she had stayed on the line for some period of time. Plaintiff's Deposition, p. 57; see also Plaintiff's Deposition, Exhibit 10. Plaintiff attests in her affidavit that AT&T did not consider camping on a call to be a problem, and that she had been informed when she worked for AT&T that they could stay on a call for two minutes in order to ensure that a customer was taken care of. Plaintiff's Exhibit 1, ¶ ¶ 30-31. Plaintiff was advised that she was receiving informal coverage for misconduct, but no formal disciplinary entry was placed in her file. Plaintiff's Deposition, pp. 58-59. Two days later, Center Director Kevin Gaylord sent out a memorandum discussing CPAT referrals as well as customer abuse situations. One of the items mentioned in this memorandum was that sales associates should not stay on the line for more than two minutes. Plaintiff's Deposition, Exhibit 11.

On May 8, 2007, Graham sent an email to her work group regarding "daily expectations", which included instructions that on every new order, sales associates were expected to call for a manager ("coach on demand" or "COD") to sit with them and listen in on the call. Plaintiff's Deposition, pp. 64-65, Plaintiff's Deposition, Exhibit 12, p. 2. Plaintiff responded to this email by telling Graham that calling for a manager was "something that mentally I don't do" because she was

---

[4]"Camping" is remaining on a transferred call without a business reason. This is considered customer abuse because sales associates need to be available for customers that call in, and if sales associates stay on the phone and cannot receive another call, they are providing no service. Zelaya Deposition, pp. 23-24. Georgina Zelaya was Plaintiff's sales manager, one level above Plaintiff's direct supervisor. Zelaya Deposition, pp. 8, 10.



busy with the customer and that she believed she could do a good job without someone sitting behind her. Graham responded by telling Plaintiff that she did need to call for a manager and that she would schedule a time for them to get together, to which Plaintiff responded "Pls don't schedule any time", that she wanted to be on the phone and had been told before that she was doing well and to just keep doing what she was doing, that she didn't want to lose her job for "insubordination, misconduct, etc.", and that it would "be a waste of yours and my time to go over stuff that we don't have to". Plaintiff's Deposition, Exhibit 12, p. 1.

Graham thereafter met with the Plaintiff and a CWA representative on May 20, 2007, concerning Plaintiff's "unwillingness to call for COD's, removal approvals,[5] and her utilization of the Contact pad." Plaintiff's Deposition, Exhibit 13. At this meeting, Graham directed Plaintiff to comply with her instructions, and told her that a failure to do so would be "considered misconduct and disciplinary action [could] take place for not complying". Id. See also Plaintiff Deposition, pp. 66-67, 69-70. Again, however, no formal discipline resulted from this meeting. Plaintiff's Deposition, p. 70. Plaintiff testified that this meeting occurred after she had sent an email about a customer receiving services they had not requested, and that the customer got "raped" on his account. Plaintiff testified that the meeting of May 20, 2007 was held the next day, and that she believed Graham was "putting [her] in [her] place". Plaintiff's Deposition, p. 69; see also Plaintiff's Exhibit 1, ¶¶ 34-36.

The Defendant has submitted evidence to show that the following month, on June 8, 2007, Graham again met with the Plaintiff to "give coverage" regarding three issues (adjustment of

---

[5]In addition to new orders, Sales Associates had been told that, anytime a customer wanted something removed from their account, they were to have a manager or coach come sit with them on the call. Plaintiff's Deposition, pp. 66-67.



termination charges without authorization, takeover referrals, and adjustments).  Plaintiff's Deposition, Exhibit 15.  Plaintiff testified that she did not recall this meeting, and was not sure if it had occurred.  Plaintiff's Deposition, p. 73.

There is no dispute that, up to that point, Plaintiff had not received any formal discipline from Graham.  However, on June 11, 2007 another CPAT referral was received from the CPAT team stating that Plaintiff had been observed camping on a call regarding DSL service for two minutes and eight seconds after transferring a customer to tech support.  Plaintiff's Deposition, Exhibit 16.  Plaintiff concedes that these referrals come from the CPAT team in Atlanta, and were not initiated by Graham.  Plaintiff's Deposition, p. 75.  Plaintiff also conceded that she had camped on the phone for two minutes and eight seconds, stating that she was trying to correct an error on another account.  Plaintiff's Deposition, pp. 75-76.  Graham met with the Plaintiff and a CWA representative where they all listened to the call regarding the DSL service, following which Graham suspended Plaintiff for two days for misconduct.  Plaintiff's Deposition, Exhibit 17-18.  Plaintiff was further advised that any future incidents of misconduct could result in more severe disciplinary action, including termination.  Plaintiff again declined to sign the personnel form.  Plaintiff's Deposition, Exhibit 18; see also, Plaintiff's Exhibit 1, ¶ ¶ 37-38.

On June 15, 2007, Plaintiff was provided copies of the "AT&T BCS Inbound Sales Southeast Region Profession Performance Standard" and a document entitled "Our Values In Action".[6]  See Plaintiff's Deposition, Exhibits 19 and 20.  These documents set out what the

---

[6]In her deposition, Plaintiff testified that she could not recall if she had been provided a copy of the AT&T BCS document (Plaintiff's Deposition, Exhibit 20), but in her affidavit she states that she did receive this document.  Plaintiff's Deposition, p. 80; Plaintiff's Exhibit 1, ¶ ¶ 13-14.

7



Defendant considered to be fraudulent sales and adjustment activity. <u>Plaintiff's Deposition</u>, p. 80.

In late June 2007 Plaintiff put in an overtime sheet with Graham for fifteen minutes of overtime for which she had not received prior approval. Plaintiff testified that it was company policy that overtime be approved in advance. <u>Plaintiff's Deposition</u>, p. 85. Graham told the Plaintiff that she would pay for the overtime but that Plaintiff would be charged with misconduct if she did this again. <u>Plaintiff' Deposition</u>, pp. 85-86; <u>Plaintiff's Deposition</u>, Exhibit 23. Plaintiff testified that an African American employee, Ivette Davis, had also filled out an overtime sheet, and initially indicated that nothing was ever said to Davis about her having worked unauthorized overtime. However, Plaintiff subsequently acknowledged that she did not know what had happened with respect to Davis' overtime. <u>Plaintiff's Deposition</u>, pp. 86-88.

Plaintiff attests in her affidavit that on June 24, 2007 she complained to her "supervisor"[7] that she felt that she was being discriminated against and that African American employees were being treated more favorably. <u>Plaintiff's Exhibit 1</u>, ¶ 44.

On June 25, 2007, Plaintiff was working in a "side by side" with Susan Isgro where Plaintiff was being coached about "parting shots" on calls (i.e. what to say at the conclusion of a call), when Plaintiff asked Isgro if that was "all [she] had to do today". <u>Plaintiff's Deposition</u>, Exhibit 21; <u>see also</u> Plaintiff's Deposition, Exhibit 24. Plaintiff testified that she was not "exactly" being sarcastic, but that Isgro was a "sales coach not a babysitter to figure out whether or not we are saying this or not". <u>Plaintiff's Deposition</u>, pp. 82-83. Although Exhibit 24 to Plaintiff's Deposition documents a subsequent discussion between the Plaintiff and Graham concerning this issue, Plaintiff

---

[7]The "supervisor" is not identified.

8



testified in her deposition that she did not recall having any discussion with Graham about this matter. Plaintiff's Deposition, pp. 88-89.

Plaintiff attests that the next day, June 26, 2007 she was counseled by Graham for not receiving removal approval from a supervisor; Plaintiff's Exhibit 1, ¶ 45; Plaintiff's Deposition, Exhibit 22; and on June 27, 2007, Plaintiff was given a letter in lieu of suspension for misconduct for failure to follow company policies and procedures. Plaintiff's Deposition, Exhibit 26. This letter in lieu of suspension was because of the incident where Plaintiff did not call for removal approval prior to executing this procedure. See Plaintiff's Deposition, Exhibit 25. Plaintiff was advised that any future incidents of misconduct could result in more severe disciplinary action up to and including termination. Id. See also Plaintiff's Deposition, pp. 89-91. Plaintiff testified that she believed the reason she received this counseling from Graham was because Plaintiff had been sending emails to Graham's superiors about Graham not helping her on a call. Plaintiff's Deposition, p. 91.[8] Plaintiff also attests in her affidavit that African American employee Joy Lynn Simpson failed to call for removal approval but was not disciplined. Plaintiff's Exhibit 1, ¶ 43.

On July 13, 2007, Plaintiff was suspended for five days without pay for misconduct as a result of another CPAT referral. Plaintiff's Deposition, Exhibit 28. See also Plaintiff's Deposition, Exhibits 30-31. This referral was made after Plaintiff had provided incorrect information to a customer about the cost for call lines. In her deposition, Plaintiff disputed that she did anything wrong on this call other than a mere technical violation of policy. Plaintiff's Deposition, pp. 96-99. In any event, after the suspension, Plaintiff asked City Director Kevin Gaylor to move her off of

---

[8]Plaintiff did not provide copies of any such emails. Plaintiff's Deposition, pp. 91-92.

9



Graham's team.  Plaintiff's Deposition, p. 101.  Plaintiff was then moved to Sabrina Rocha's (Hispanic) team.  Plaintiff's Deposition, pp. 101-102.

Shortly after being transferred to Rocha's team, Plaintiff was interviewed by Rocha on July 23, 2007 concerning Plaintiff having improperly handled a call with a customer.  Plaintiff's Deposition, Exhibit 29.  Plaintiff had a CWA representative present in this meeting, and received no discipline as a result of this incident.  Plaintiff's Deposition, p. 103.

On September 19, 2007, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission (SCHAC),[9] alleging that she had been unfairly disciplined because of her race, and in retaliation for complaining about discriminatory conduct.  Plaintiff's Deposition, Exhibit 32.

On October 26, 2007, Rocha met with the Plaintiff concerning an allegation that she had received false revenue for an order that she was not supposed to have gotten credit for.  Plaintiff's Deposition, pp. 127-130; Plaintiff's Deposition, Exhibit 35.  Plaintiff was subsequently terminated effective that same date.  Plaintiff's Deposition, Exhibit 36.  Plaintiff then amended her charge of discrimination in May 2008 to add "discharge" as a claim.  Plaintiff's Deposition, Exhibit 37.  Plaintiff received a right to sue letter on June 12, 2008.  Complaint, ¶ 13.

In this lawsuit, Plaintiff alleges that she was treated unfairly and disciplined because

---

[9]As South Carolina is a deferral state, Plaintiff could file her administrative claim with SCHAC, instead of with the Equal Employment Opportunity Commission (EEOC).  Nelson v. Lockheed Missiles and Space Co., No. 97-1430, 1997 WL 727609 at **1 n. 1 (4th Cir. November 24, 1997); E.E.O.C. v. Hansa Products, Inc., 844 F.2d 191, 192 n. 1 (4th Cir. 1988) (quoting 42 U.S.C. § 2000e-5(e)) ["A deferral state is one 'which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice.'"]; see S.C.Code Ann. § 1-13-90, et. seq., as amended.



of her race in violation of Title VII and 42 U.S.C. § 1981 (Count 1), and that she was retaliated against for complaining about the Defendant's unlawful acts of discrimination, again in violation of Title VII and 42 U.S.C. § 1981 (Count II).

### Discussion

The Defendant seeks summary judgment on both of Plaintiff's claims. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

### I.

### (Disparate Treatment Claim)

Plaintiff first asserts a race discrimination claim for disparate treatment in violation of Title VII and 42 U.S.C. § 1981,[10] based on her assertion that she was subjected to racial discrimination when she was unfairly disciplined and discharged. Plaintiff's claim requires proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in McDonnell

---

[10] To pursue a claim under § 1981, Plaintiff must prove that the Defendant "intended to discriminate [against the Plaintiff] on the basis of [her] race, and that the discrimination interfered with a contractual interest." Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006).



Douglas Corp. v. Green, 411 U.S. 792 (1973).[11] Plaintiff has not offered any direct evidence of race discrimination,[12] and Defendant argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether any of her employment actions occurred because of her race under the McDonnell Douglas proof scheme to survive summary judgment.[13] The undersigned is constrained to agree.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her. Second, once this presumption has been established,

---

[11]Although McDonnell Douglas is a Title VII case, the standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).

[12]Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974)); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[13]Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Historically, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases, but that is no longer the case. See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); cf. Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. Therefore, the undersigned has only evaluated Plaintiff's claim using the McDonnell Douglas analysis. See Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).

12



the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).[14]

In order to meet the first prong of the McDonnell Douglas formula and establish a prima facie case of race discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful

---

[14]When a Plaintiff is a member of a majority class, some courts have held that they must also set out background circumstances to show that the Defendant discriminates against the majority. Farr v. St. Francis Hosp. and Health Centers, 570 F.3d 829, 833 (7th Cir. 2009); Wilson v. Ohio, 178 Fed.Appx. 457, 464-465 (6th Cir. 2006)[In adapting the McDonnell Douglas test to cases of reverse discrimination, the Plaintiff must demonstrate "background circumstances [to] support the suspicion that the Defendant is the unusual employer who discriminates against the majority."] (Quoting Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985)). Whether this heightened burden standard is applicable in the Fourth Circuit is unclear. See Weeks v. Union Camp Corp., Nos. 98-2814 and 98-2815, 2000 WL 27771, at n. 13 (4th Cir. 2000). In any event, for the reasons set forth and discussed hereinabove, Plaintiff's claim fails even with out being considered under this heightened standard.



discrimination.  See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995).  See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996).  It is undisputed that Plaintiff is a member of a protected class, and for purposes of summary judgment the Defendant also does not dispute that she was subjected to an adverse employment action.  However, the Defendant argues that the evidence does not show that Plaintiff was satisfactorily performing her job, or that she was subjected to any adverse employment action under circumstances giving rise to an inference of unlawful discrimination.

**Whether Plaintiff was performing her job satisfactorily**.  Defendant argues that Plaintiff's three suspensions prior to her termination show that she was not meeting her employer's legitimate expectations, even though she had been given clear guidance and instructions on what was expected of her as a sales associate.  See generally Plaintiff's Deposition, pp. 75-76, 89-91, 96-102; see also pp. 127-130; Plaintiff's Deposition, Exhibits 16-18, 25-26, 28; see also Exhibits 35-36.  The undersigned agrees.

With respect to her two day suspension for camping on a call on June 11, 2007, Plaintiff does not dispute that she committed this offense, offering as a reason that she stayed on the line that long in order to correct an error on another account.  Plaintiff's Deposition, pp. 75-76.  With respect to the letter in lieu of suspension she received on June 27, 2007 for not obtaining removal approval prior to executing this procedure, Plaintiff again does not contest that she engaged in this conduct.  Plaintiff' Deposition, pp. 89-91.  Finally, with respect to Plaintiff's five day suspension on July 13, 2007 for providing incorrect information to a customer about the cost for call lines, Plaintiff again does not dispute that this occurred, although she asserts in her deposition that what she did was

14



a mere technical violation of policy. <u>Plaintiff Deposition</u>, pp. 96-99. The aforementioned employment decisions, where disciplinary action was taken, do not even include the other evidence in the record showing numerous other counseling sessions for which Plaintiff received no disciplinary action. <u>Plaintiff's Deposition</u>, pp. 34-36, 43-44, 46-48, 57-59, 66-67, 69-70, 85-86, 103.[15]

This evidence does not show that Plaintiff was meeting her employer's expectations or adequately performing her job. <u>Cf</u>. <u>Beall v. Abbott Labs</u>, 130 F.3d 614, 619 (4th Cir. 1997)[In considering whether a claimant was adequately performing their job, it is the perception of the decision maker which is relevant, not the self assessment of the claimant]; <u>Holifield v. Reno</u>, 115 F.3d 1555, 1565 (11th Cir. 1997)[inquiry centers upon the employer's beliefs, and not the employee's own perception of [her] performance]; <u>King v. Rumsfeld</u>, 328 F.3d 145, 149 (4th Cir. 2003)[On a motion for summary judgment, a Plaintiff's "own testimony . . . cannot establish a genuine issue as to whether [the Plaintiff] was meeting [the employer's] expectations."].

**Whether employees who are not members of Plaintiff's protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination.** Even if the Court were to assume for purposes of summary judgment that the evidence was sufficient to create a genuine issue of fact as to whether Plaintiff was adequately performing her job, Plaintiff has provided no evidence to show that she was subjected to any disciplinary action or was discharged because of her race. As previously noted, Plaintiff does not dispute that she engaged in the conduct which led to her suspensions, nor does she dispute that she engaged in the conduct which ultimately led to her termination. Plaintiff has also not alleged that any

---

[15]These other events do not in turn include the additional counseling sessions of which the Defendant has submitted evidence, but which Plaintiff testified she could not recall or never occurred.



racial comments were made as part of any of these disciplinary actions, nor does any of the documentary evidence presented to the court reflect any racial animus. See <u>Sullivan v. River Valley School District</u>, 197 F.3d 804, 815 (6th Cir. 1999), <u>cert. denied</u>, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief...."].

To support an inference of discrimination in these disciplinary actions, Plaintiff testified that an African American employee, Ivette Davis, also worked overtime without prior approval. However, she has provided no evidence (such as employment records, testimony from Davis, etc.) to show that this other event in fact occurred, or that Davis was treated any differently if it did. <u>Plaintiff's Deposition</u>, pp. 86-88. Plaintiff also attests in her affidavit that African American employee Joy Lynn Simpson failed to call for removal approval "and was not discipline or terminated". However, even assuming this general and conclusory statement to be true for purposes of summary judgment, Plaintiff has again submitted no evidence to show who Simpson was, whether she had a similar disciplinary history or work record, or when the event occurred; nor is any reason posited for why Simpson would or should have been subject to termination, when Plaintiff was not herself terminated for this infraction. Further, with respect to the discipline Plaintiff received for CPAT referrals, Plaintiff herself acknowledges that these referrals came from Atlanta, and were not initiated by Graham or anyone else in her department.

As a further argument for racial animus on the part of her employer, Plaintiff has also attached four documents as exhibits to her response memorandum which appear to be affidavits from individuals who used to work for the Defendant. See <u>Plaintiff's Exhibits 2-5</u>. In one Affidavit, Pamela Bush (white) attests that she was employed by the Defendant during the relevant time period,

16



and that on numerous occasions she reported to Graham (her supervisor) that she was having problems with her personal email address and her headset, but that neither problem was corrected by Graham, but were instead corrected by Gaylord and her "Hispanic female supervisor". Bush also attests that Graham did not allow her to take a personal call from her son "that could have been an emergency".

<u>Plaintiff's Exhibit 2</u>. Joseph Dralle (white)attests that he worked for the Defendant "for over five years", but that he had heart issues and had to resign for his health because of the "hostile and racist atmosphere in our call center . . . .". Dralle further attests that on one occasion he was suspended for five days for not disclosing something added to an account. Although Dralle apparently does not contest that he committed this infraction, he states that he did not profit from this addition and that it was merely an oversight. Dralle further attests that an unnamed African American coworker had a similar commission and was "talked to but not suspended." This coworker is not further identified.

<u>Plaintiff's Exhibit 3</u>. Allen Harken (white) attests that he was employed by BellSouth during the relevant time period, that he applied for and was qualified for a sales coach position, but that he was not properly interviewed and the position was awarded to Bridget Walker, and unqualified African American employee. <u>Plaintiff's Exhibit 4</u>. The final affidavit [signature illegible] is also from a former employee of the Defendant during the relevant time period, who states that "[m]any African American employees [were] not punished as harshly as Caucasian employees". This individual further attests that managers would pick on particular people, and make it "so unbearable that the employees would have to quit or they would finally find a reason to terminate them", and that the "majority of the people being singled out seemed to be of the Caucasian persuasion". This individual concludes by stating that he "definitely witnessed unfair treatment of employees and much of it was governed by skin color . . . .". <u>Plaintiff's Exhibit 5</u>.



None of these affidavits create a genuine issue of fact as to whether the Plaintiff was discriminated against on the basis of her race. Plaintiff has provided no evidence about Bridget Walker, what her qualifications were, what Harken's qualifications were, or even whether the same decision makers were involved in deciding on the promotion for sales coach discussed by Harken. See Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 760 (4th Cir. 1998)[In order to succeed on a failure to promote claim, a Plaintiff must ordinarily show that they were more qualified for the position than the individual who actually received the position], rev'd on other grounds, 119 S.Ct. 2388 (1999), aff'd on reh'g, 206 F.3d 431 (4th Cir. ), cert. denied, 121 S.Ct. 66 (2000). To the extent the individuals in these affidavits further state that African American employees received more favorable treatment, Plaintiff has failed to provide the names of any of these employees, what their positions were, what their work histories were, how their work histories compared to the individuals who submitted these affidavits, what kind of disciplinary actions were taken (or not) against these individuals, or even what kind of disciplinary history exists against the African American employees who worked under Graham verses the White employees who worked under Graham who had similar employment histories. See Smith v. Sunbelt Rentals, Inc., 356 Fed.Appx. 272 at ** 6-7 (11th Cir. Dec. 10, 2009)[Plaintiff must show that she and an alleged comparable employee are "similarly situated in all relevant respects"]. Rather, the statements made by these individuals in these affidavits, like Plaintiff's own statements, consist of mere general and conclusory feelings or assumptions that they were treated poorly because they are Caucasian.

Such general and conclusory statements, no matter how heartfelt, are simply not sufficient absent any supporting evidence to create an inference of discrimination, or to defeat the Defendant's motion for summary judgment. Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir.



1993) ["[U]nsupported allegations do not establish a prima facie case of [ ] discrimination...."]; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) [there must be evidence on which a jury could reasonably find for the Plaintiff]; Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat summary judgment]; cf. Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]; Yarnevic v. Brink's Inc., 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment].

Hence, even if the evidence showed that the disciplinary actions taken against the Plaintiff were unwarranted, there is nothing in the evidence to show that her race played any role in these disciplinary decisions, or in her discharge, other than Plaintiff's own assumption that this was the case. Cf. Nichols v. Caroline County Bd. of Educ., 123 F.Supp.2d 320, 327 (D.Md. 2000)[Plaintiff's contention that supervisors subjected him to adverse employment actions "because I am who I am" insufficient to establish [discriminatory] character to their disagreements and misunderstandings]; Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 (4th Cir. 2000) [affirming grant of summary judgment to the employer where the employee did not "show that...[the] problems were [racial] in nature"]; see also Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."]; Dowe v. Total Action Against Poverty in Roanoke Valley,

19



145 F.3d 653, 657 (4th Cir. 1998); cf. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995)

["Title VII (does) not protect against unfair business decisions - only against decisions motivated by

unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977);

Colbert v. Tapella, 677 F.Supp. 2d 289, 295 (D.D.C. 2010)(quoting Hairsine v. James, 517 F.Supp.2d

301, 308-309 (D.D.C. 2007)["[T]he scope of review in employment discrimination cases is more

narrow than [Plaintiff] wishes because federal courts are not review boards for local employment

decisions . . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without

being illegal; Title VII protects discriminatory decisions, not wrong ones."].

        In sum, based on the evidence discussed hereinabove, the undersigned cannot find that

Plaintiff has submitted evidence sufficient to create a genuine issue of fact as to either the second or

fourth prongs of her prima facie case of disparate treatment race discrimination.  Boden, 978 F.Supp.

at 659 [former employee's own subjective belief and conclusory statements that he had been

discriminated against are not sufficient to raise reasonable inference of unlawful discrimination];

Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot

create a general issue of fact through mere speculation or by the building of one inference upon

another."].  Plaintiff's disparate treatment race discrimination claim should therefore be dismissed.

Gairola v. Virginia Dep't of General Services, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should

be dismissed "...when the only evidence in support of the plaintiff's...case is based on unfounded

conjecture...that her disfavorable treatment was the result of discrimination...."]; Hawkins, 203 F.3d

at 281 [affirming the grant of summary judgment to the employer where the employee did not "show

that...[the] problems were [racial] in nature"].



# II.

## (Retaliation Claim)

Plaintiff's retaliation claim is based on her allegation that the Defendant retaliated against her after she made complaints about being discriminated against on the basis of her race. Complaint, ¶¶ 78-79. Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII[16] are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant

---

[16]See, n. 11, supra.



employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

After careful review and consideration of the materials and arguments presented in this case, the undersigned can find no evidence of unlawful retaliation on the part of the Defendant.

**Prima Facia Case**. Plaintiff has established that she engaged in protected activity, and that adverse employment actions were taken against her. Plaintiff alleges (assumed to be true for purposes of summary judgment) that she complained to a supervisor on June 24, 2007 that she felt she was being discriminated against and that other employees who are African American were being treated more favorably. Plaintiff's Exhibit 1, ¶ 44; see also Plaintiff's Deposition, Exhibits 32-33 [Administrative Charge of Discrimination, ¶ II, Initial Inquiry Questionnaire, ¶ 7]. Plaintiff notes that two days later, on June 26, 2007, she was counseled by Graham for not receiving removal approval from a supervisor prior to completing that transaction; Plaintiff's Exhibit 1, ¶ 45; Plaintiff's Deposition, Exhibit 22; and that the following day Plaintiff was given a letter in lieu of suspension for misconduct for failure to follow this policy. Plaintiff's Deposition, Exhibits 25-26. Plaintiff was also suspended for five days as a result of another CPAT referral on July 13, 2007. Plaintiff's Deposition, pp. 96-99; Plaintiff's Deposition, Exhibit 28, 30-31. Then, following her having filed a charge of discrimination with SCHAC on September 19, 2007, Plaintiff was terminated on October 26, 2007 after being accused of receiving false revenue for an order that she was not supposed to have gotten credit for. Plaintiff's Deposition, 127-130; Plaintiff's Deposition, Exhibits 35-36.

However, while Plaintiff having complained to a supervisor about discrimination and having filed an administrative charge of discrimination with SCHAC are both protected activities



under Title VII, and it is also undisputed that the Defendant took adverse actions against the Plaintiff, Plaintiff still must establish a causal connection between these events in order to establish her prima facia case.  Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"].  Plaintiff has provided no evidence to show that any of the disciplinary actions taken against her, including her discharge, were related to her complaints of discrimination, other than that they occurred shortly after she engaged in protected activity.  Nonetheless, since some courts accept a close proximity in time as being sufficient, standing alone, to establish a causal connection (at least for purposes of summary judgment), and in order to allow for a more thorough discussion of Plaintiff's claim, the undersigned will credit Plaintiff with the establishment of her prima facia case.  Cf. Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; Pantoja v. American NTN Bearing Mfg. Corp., 495 F.3d 840, 850 (7th Cir. 2007) [Timing was "suspicious enough to suffice to support [ ] prima facie case."]; see Texas Dep't of Community Affairs, 450 U.S. at 253 [the burden of establishing a prima facie case is not onerous].

   **Legitimate Reasons**.  As for whether the Defendant has set forth legitimate, nondiscriminatory reasons for the actions taken, as previously discussed herein, supra, the Defendant's evidence reflects that Plaintiff's disciplinary charges were a result of her repeated episodes of misconduct.  This evidence includes not just the documents supporting the disciplinary actions taken, but Plaintiff's own testimony that she had in fact committed the infractions cited (although she disputes their severity), all of which is sufficient to establish a legitimate, nondiscriminatory reason

23



for the Defendant's actions. . <u>See</u> <u>EEOC v. Clay Printing Co.</u>, 955 F.2d 936, 941 (4th Cir. 1991) [The

Defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production,

not of persuasion]. Therefore, Plaintiff must present evidence of pretext in the making of these

decisions in order to avoid summary judgment on her retaliation claim.

**Pretext**. In order to show pretext, Plaintiff must show that "but for" the Defendant's

intent to retaliate against her because of her having engaged in protected activity, she would not have

been subjected to the employment actions at issue. <u>EEOC</u>, 955 F.2d at 941; <u>Conkwright</u>, 933 F.2d

at 234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole...

must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by

[retaliatory animus].'" <u>LeBlanc v. Great American Insurance Co.</u>, 6 F.3d 836, 843 (1st Cir. 1993)[In

order to show pretext, "'the evidence as a whole... must be sufficient for a reasonable fact-finder to

infer that the employer's decision was motivated by [retaliatory animus].'"] ( citing <u>Goldman v. First</u>

<u>Nat'l Bank</u>, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting <u>Connell v. Bank of Boston</u>, 924 F.2d 1169,

1172, n. 3 (1st Cir. 1991), <u>cert.</u> <u>denied</u>, 111 S.Ct. 2828 (1991)); <u>Reeves v. Sanderson Plumbing</u>

<u>Products, Inc.</u>, 530 U.S. 133, 141-143 (2000). Plaintiff has failed to present any such evidence.

Plaintiff concedes in her own deposition testimony that she in fact committed the

actions which led to her June 27, 2007 letter in lieu of suspension, her July 13, 2007 five day

suspension, and the October 26, 2007 infraction which led to her discharge. Plaintiff's argument is

essentially that the disciplinary actions taken against her were too severe, or did not follow the

Defendant's employee discipline policy, and that therefore the actions taken against her must have

been retaliatory. However, it is undisputed in the record that when Plaintiff received the letter in lieu

of suspension on June 27, 2007 for failing to follow the Defendant's prior approval removal



procedure, this was the *second* time Plaintiff had been counseled about this procedure. Plaintiff had

met with Graham with a CWA representative present on May 20, 2007 concerning her reluctance to

obtain removal approvals, even though she knew that that was company policy. Plaintiff's Deposition,

pp. 66-67; Plaintiff's Deposition, Exhibit 13. No disciplinary action had been taken as a result of that

prior counseling session. Plaintiff's five day suspension on July 13, 2007 was as a result of her *third*

CPAT referral over a three month period, and her second in less than a month. Plaintiff had received

no disciplinary action as a result of the first referral on April 17, 2007; see Plaintiff's Deposition, pp.

57-59; Plaintiff's Deposition, Exhibits 9-10; and although she received a two day suspension

following her second CPAT referral on June 11, 2007; Plaintiff's Deposition, pp. 75-76; Plaintiff's

Deposition, Exhibits 16-18; Plaintiff's Exhibit 1, ¶ ¶ 37-38; this was *before* Plaintiff engaged in

protected activity on June 24, 2007, and is therefore not alleged to have been retaliatory conduct by

the Defendant.

It was also noted that Plaintiff had another counseling session after her protected

conduct, for which she received no disciplinary action notwithstanding her long history (as shown in

the evidence) of having to be counseled for workplace infractions. Plaintiff's Deposition, p. 103;

Plaintiff's Deposition, Exhibit 29.[17] Further, Plaintiff herself states in her affidavit and argues in her

brief that she believes Graham retaliated against her because she had reported Graham for improperly

handling a customer complaint and for reporting on the ethics hotline about the Defendant "raping"

---

[17]Although Exhibit 24 to the Plaintiff's Deposition documents a counseling session between the Plaintiff and Graham concerning a "side by side" coaching issue, Plaintiff testified in her deposition that she did not recall having this discussion. Plaintiff's Deposition, pp. 88-89. For purposes of summary judgment, therefore, the undersigned has not considered this incident in issuing this opinion.

25



customers.  Plaintiff's Exhibit 1, ¶¶ 25, 34-36; Plaintiff's Deposition, pp. 69, 91; Plaintiff's Brief, p.

21 ["The discipline was in retaliation for the Plaintiff's complaints to management regarding

Graham's refusal to assist her with a customer"].  Such conduct by Graham or other management

officials of the Defendant, even if assumed to be true for purposes of summary judgment, is not

evidence to support a Title VII retaliation claim, because it has nothing to do with Plaintiff's protected

activity.  Sullivan, 197 F.3d at 815 ["Without a showing that those other reasons were discriminatory,

[Plaintiff] cannot establish a prima facie case for relief...."]; Rudolph v. Hechinger, 884 F.Supp. 184,

188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against

decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251,

1257 (5th Cir. 1977).  Plaintiff's final disciplinary action was taken by Rocha after she had been

transferred from Graham's team.  Plaintiff's Deposition, pp. 127-130.

      The undersigned can discern no retaliatory animus in the employment decisions taken

by the Defendant following Plaintiff's protected activity in light of this evidence.  Plaintiff does not

dispute that she engaged in the conduct cited (disputing only the seriousness of these events), and in

light of the record evidence of Plaintiff's documented history of employment problems, there is no

basis to find that the decisions made were based on Plaintiff's having engaged in protected activity

absent any other evidence giving rise to such an inference.  There simply is no such evidence.  There

is no evidence that anyone ever said anything to Plaintiff about her having complained about racial

discrimination, none of the documentary evidence reflects any such connection, Plaintiff has provided

no evidence to show that either Graham or Rocha even knew that she had made any such complaints,

and Plaintiff herself subscribes a non-discriminatory motivation for retaliation by Graham.  The mere

fact that Plaintiff engaged in protected activity and then suffered an adverse employment action is not



by itself sufficient to survive a properly supported motion for summary judgment. Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D.Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.'].

While Plaintiff obviously believes she was dealt with unfairly, and indeed the undersigned makes no finding as to whether the discipline meted out to her was appropriate, Plaintiff has simply provided no evidence to support her general and conclusory allegations that the *reason* she received these adverse employment actions was because she engaged in activity protected by Title VII. Sullivan, 197 F.3d at 815 ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....]. The mere fact that Plaintiff engaged in protected activity does not immunize her from actions by her employer which may otherwise be justified by her work record or performance. Ross, 759 F.2d at 366 ["Title VII serves the laudable goal of protecting employee access to agencies and courts. It does not shield employees from normal sanctions for misconduct."]; Bodoy v. North Arundel Hospital, 945 F.Supp. 890, 898 (D.Md. 1996).

Since Plaintiff has offered no evidence to show that the actions complained of were the result of unlawful retaliation, other than her own subjective belief and speculation, her Title VII/§ 1981 retaliation claim should be dismissed. Beale, 769 F.2d at 214 [Plaintiff may not "create a genuine issue of fact through mere speculation or the building of one inference upon another"]; Ross, 759 F.2d at 365; McNairn, 929 F.2d at 980; Smith, 618 F.2d at 1067; Komel, 874 F.2d at 475; Williams, 871 F.2d at 456 (citing Gairola v. Virginia Dep't of General Servs., 753 F.2d 1281, 1288 (4th Cir. 1985)); United Black Fire Fighters of Norfolk v. Hirst, 604 F.2d 844 (4th Cir. 1979). See Rule 56, Fed.R.Civ.P.; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Felty, 818 F.2d 1129-1130;

27



<u>Gairola</u>, 753 F.2d at 1288, n.4.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

July 12, 2010

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

